TOWN OF BLOWING ROCK v. JAMES B. GREGORIE, CAROLINE GREGORIE, AND LLOYD ROBBINS, CONTRACTOR.

(Filed 13 January, 1956.)

**1. Dedication § 4—**

Where a municipality improves, repairs, or paves a street dedicated to the public by the registration of a plat showing such street, especially when accompanied by a long-continued use of the street by the public, there is an acceptance of the dedication of the street as a public street of the town.

**2. Dedication § 5—**

Purchasers of lots sold by reference to the recorded map of a subdivision acquire vested rights to have all and each of the streets shown on the map kept open.

**3. Dedication § 6—**

Where the dedication of a street has become complete by the acceptance by the town, the right to revoke the dedication is gone except with the consent of the town, acting on behalf of the public, and the consent of those persons having vested rights in the dedication.

**4. Same—**

Where persons purchase lots with reference to a recorded map and thereby acquire an easement to use the streets shown on the plat, the closing of a street shown on the plat by the municipality without their request or consent would deprive them of property rights in violation of Art. I, Sec. 17, of the State Constitution and the 14th Amendment to the Constitution of the United States.

**5. Municipal Corporations § 25b—**

A municipality holds its streets in trust not only for itself and its citizens, but also for the general public.

**6. Statutes § 5c—**

Under our Constitution, the validity of a statute may not be attacked on the ground that its provisions do not correspond with the subject expressed in the title, since, though a title may be called in aid of construction, it

does not control the text. Constitution of North Carolina Art. II, Sec. 21. G.S. 12-1 refers solely to public-local or private acts.

**7. Municipal Corporations § 25b—**

G.S. 153-9 (17) applies to municipalities in closing a public street.

**8. Statutes § 5d—**

Statutes *in pari materia* are to be construed together, and it is a general rule that the courts must harmonize such statutes, if possible, and give effect to each.

**9. Municipal Corporations § 25b—**

G.S. 153-9(17) and G.S. 160-200(11) may be harmonized, and therefore must be construed *in pari materia*, so that a municipality may not close a public road or street without giving notice by registered mail to individuals owning property adjoining the road or street, and notice by publication in the newspaper published in the county.

**10. Dedication § 6—**

An accepted dedication of streets in a subdivision cannot be revoked by successors in title to the subdivision quitclaiming all their right therein to an owner of a lot contiguous to the street when the municipality does not lawfully consent to such revocation.

**11. Controversy Without Action § 2: Estoppel § 11a: Limitation of Actions § 15—**

Where the case is submitted to the court upon stipulations and admissions in the pleadings and there is no reference therein to estoppel or the bar of the statute of limitations, the questions of estoppel and of the statute of limitations are not presented.

**12. Controversy Without Action § 2—**

Where the case is submitted to the court upon stipulations and admissions in the pleadings, and the fact appears therein that notice required for the validity of a pertinent resolution or ordinance was not given, the question of validity of the resolution or ordinance is presented to the court in rendering judgment arising as a matter of law on the facts stipulated, and allegation that the resolution or ordinance was *ultra vires* is not necessary.

**13. Same—**

Where the case is submitted to the court upon stipulations and admissions in the pleadings, the facts agreed are in the nature of a special verdict upon which the court is requested to render judgment arising as a matter of law thereon, and the court is not permitted to infer or deduce other facts from those stipulated. Therefore, observations of the court based upon a personal view of the *locus in quo* at the insistence of counsel for both parties, have no place in the judgment and will not be considered on appeal, but do not justify disturbing the judgment when such observations are harmless.

**14. Municipal Corporations § 25b—**

When a street of a municipality is unlawfully obstructed, the municipality may maintain a suit for mandatory injunction to remove the obstruction.

APPEAL by defendants from *Sharp, Special Judge,* June Civil Term 1955, of WATAUGA.

Civil action by the Town of Blowing Rock to restrain the defendants from closing a street in the town known as Valley View Road.

The parties waived a jury trial, and agreed that the judge might hear and decide the case upon the admissions in the pleadings, stipulations made by the parties, and enter judgment.

The development known as Mayview Park Subdivision, which is within the corporate limits of the Town of Blowing Rock, was made in 1919, and the map of this subdivision was recorded in the office of the Register of Deeds for Watauga County in June 1920. This map shows a large number of lots and streets in this subdivision, and it shows Valley View Road as one of the streets.

The parties have been unable to find any minutes among the records of the town showing that the Commissioners of the town formally accepted the dedication of the streets shown on the map above mentioned, but from June 1920 until 4 August 1950, the Town of Blowing Rock continuously kept Valley View Road open as shown on the said map, and periodically made repairs on it. Valley View Road is paved to a point at about the south corner of Lot No. 84 in this development, and beyond that point to the end of the road it is unpaved.

The defendants James B. Gregorie and Caroline Gregorie own Lot No. 81 in this development. Between Lot No. 84 and Lot No. 81 are Lots Nos. 82 and 83. Valley View Road ends just beyond Lot No. 81 in a turn or dead end circle at a cliff known as Lover's Leap, where there is a drop of several hundred feet and a view of Johns River Gorge.

On 1 August 1950, the Commissioners of the Town of Blowing Rock passed a resolution that Valley View Road lying and being between Lots numbered 75, 76 and 81 of the Mayview Park Subdivision be abandoned, and closed as a public road, and the same is hereby released and surrendered to the defendants Gregorie for their own private use and benefit. Lot No. 75 is across this road from Lot No. 81, and Lot No. 76 is beside Lot No. 75 and beyond the dead end of Valley View Road. Wonderland Trail, a street shown on the map, runs by Lots Nos. 75 and 76 on their opposite side from Valley View Road. No notice of the meeting at which the above resolution was passed was published in the only newspaper published in Watauga County.

On 4 August 1950, T. H. Broyhill, and wife, successors in title to the owner and developer of Mayview Park Subdivision, executed a quit-

claim deed to the defendants Gregorie for all right, title and interest they might have to that part of Valley View Road lying and being between Lots Nos. 75, 76 and 81 of the Mayview Park Subdivision.

In 1954 the defendants Gregorie, by the defendant Lloyd Robbins, a contractor, erected two stone pillars in Valley View Road "one at the southwest corner of Lot 81 and the other at the southwest corner of Lot 75," and between the pillars extended a chain.

Plaintiff instituted this action 4 June 1954. On 14 August 1954 the Commissioners of the Town of Blowing Rock, at a special session, passed an ordinance repealing their resolution of 1 August 1950, and ordering that Valley View Road be restored to the use of the public, and be continued as a public street for the use of those owning property along the road, as well as other property owners in the subdivision, and the general public. No notice of this special meeting was published in a newspaper.

The court held as matters of law: (1) The town accepted the dedication of Valley View Road as a public street of the town, and maintained it as such for over thirty years; (2) All the citizens of the town and the owners of lots adjoining the road between Lots Nos. 75, 76 and 81 have an interest in the road, and were entitled to notice that the town proposed to close it; (3) The town failed to comply with G.S. 153-9(17) in that no notice was published; (4) The town had no right to release and surrender a part of Valley View Road to the defendants Gregorie for their private use; (5) The resolution or ordinance passed 1 August 1950 is invalid.

Whereupon the court entered judgment enjoining the defendants from closing or blocking off Valley View Road, and directed the defendants to remove all obstructions from the road.

The defendants appeal, assigning error.

*Wade E. Brown for Plaintiff, Appellee.*
*Louis H. Smith for Defendants, Appellants.*

PARKER, J. This Court said in *Ins. Co. v. Carolina Beach*, 216 N.C. 778, 7 S.E. 2d 13, citing numerous cases in support: "It is a settled principle that if the owner of land, located within or without a city or town, has it subdivided and platted into lots and streets, and sells and conveys the lots or any of them with reference to the plat, nothing else appearing, he thereby dedicates the streets, and all of them, to the use of the purchasers, and those claiming under them, and of the public." See also: *Hine v. Blumenthal*, 239 N.C. 537, 80 S.E. 2d 458.

However, in so far as the general public are concerned, and without reference to the claims and equities of the individual purchasers of lots

with reference to the map of such a development, it is well understood that a dedication is never complete until acceptance. This acceptance may be shown not only by formal action on the part of the authorities having charge of the matter, but, under certain circumstances, by user as of right on the part of the public, or other facts, but unless and until acceptance has been in some way established, it should be properly termed an offer to dedicate on the part of the owner. *Rowe v. Durham,* 235 N.C. 158, 69 S.E. 2d 171; *Lee v. Walker,* 234 N.C. 687, 68 S.E. 2d 664; *Irwin v. Charlotte,* 193 N.C. 109, 136 S.E. 368; *Wittson v. Dowling,* 179 N.C. 542, 103 S.E. 18; 26 C.J.S., Dedication, Sec. 34.

The stipulations state that there was a dedication of the streets shown on the recorded map of the Mayview Park subdivision. The stipulations also state that W. L. Alexander was the original owner and developer of the land comprising Mayview Park subdivision, and sold lots therein before he became bankrupt. The stipulations further show that T. H. Broyhill and C. E. Hayworth, and wife, purchased at the bankrupt sale of W. L. Alexander all of his interest and right in this subdivision; that C. E. Hayworth, and wife, sold their interest to Broyhill, and wife; that Broyhill, and wife, conveyed Lot No. 81 in this subdivision by reference to the above mentioned map as Lot No. 81 to Jack Roberts, and wife, and that Mrs. Roberts, a widow, conveyed Lot No. 81 to the defendants Gregorie by a similar reference.

According to the stipulations, the Town of Blowing Rock, from June 1920 until 4 August 1950, kept Valley View Road open as shown on the map, and periodically made repairs. The stipulations further state that Valley View Road is paved to a point at about the south corner of Lot No. 84, and that beyond that point to the end of the road it is unpaved. This user of Valley View Road by the town was of such a character as unequivocally to indicate an intention on the part of the town to accept Valley View Road for the particular purpose to which it was dedicated, because the acceptance of the dedication of a street by a town may be implied from the fact that the town exercised acts of control over it by improving, repairing or paving it, especially when accompanied by a long continued use by the public. *McElroy v. Borough of Ft. Lee,* C.C.A.N.J., 46 F. 2d 777, *certiorari* denied, 283 U.S. 853, 75 L. Ed. 1461; *Menstell v. Johnson,* 125 Or. 150, 262 P. 853, 57 A.L.R. 311, 330 (Headnote 15); 16 Am. Jur., Dedication, Sec. 34; 26 C.J.S., Dedication, pp. 105-106. The lower court decided correctly that the Town of Blowing Rock had accepted the dedication of Valley View Road, as a public street of the town.

Purchasers of lots sold by reference to the recorded map of a subdivision acquire vested rights to have all and each of the streets shown on the map kept open. *Collins v. Asheville Land Co.,* 128 N.C. 563,

39 S.E. 21; *Ins. Co. v. Carolina Beach, supra; Gaither v. Hospital,* 235 N.C. 431, 70 S.E. 2d 680; 16 Am. Jur., Dedication, Sec. 57.

The dedication of Valley View Road as a street in the Town of Blowing Rock, as shown on the map, having become complete by acceptance by the town, as above set forth, the right to revoke the dedication is gone, except with the consent of the Town of Blowing Rock acting on behalf of the public, *McElroy v. Borough of Ft. Lee, supra; Keiter v. Berge,* 219 Minn. 374, 18 N.W. 2d 35, and with the consent of those persons who have vested rights in the dedication, *Rose v. Elizabethtown,* 275 Ill. 167, 114 N.E. 14; 3 Dillon on Mun. Corp. 5th Ed., Sec. 1091.

In *Ins. Co. v. Carolina Beach, supra,* lots in a subdivision were sold with reference to a plat showing the street in question to be 99 feet in width. At the time the charter was granted to the municipality embracing the lands, the only plat recorded was a revised one showing the streets as 80 feet wide. The Court held (as stated in 5th headnote N. C. Reports) "the granting of the charter cannot be construed as having the effect of limiting the width of the street to 80 feet so as to defeat the vested right of purchasers of lots with reference to the original plat to compel the owner to abide by its dedication of the street for the full width as shown by the plat." The Court said: "To have deprived those who purchased lots with reference to the original map, and those claiming under them, of appurtenant rights in and to the streets, for the purpose of vesting such rights in another merely for private use would run counter to provisions of the Constitution of North Carolina, Art. I, Sec. 17, and to the 14th Amendment to the Constitution of the United States. See *Moose v. Carson, supra.* Compare *Sheets v. Walsh,* 217 N.C. 32."

The Resolution of the Commissioners of the Town of Blowing Rock of 1 August 1950, abandoning part of Valley View Road and releasing it to the defendants Gregorie for their own private use and benefit, states certain parts of said street have been used in the past for parking and have been used so as to be a disturbance to adjoining property owners and that the said adjoining property owners have requested the Commissioners of the town to abandon and close a certain part of the road. It does not appear from the stipulations whether there were purchasers of lots in this subdivision by reference to the recorded map, except Jack Roberts, and his wife, and the defendants Gregorie, though the stipulations state that W. L. Alexander, the original owner and creator of this subdivision, sold lots therein before becoming bankrupt. If there were such purchasers, there is no evidence that they requested or consented to the closing of part of Valley View Road, and the action of the governing body of the Town of Blowing Rock in abandoning and permitting part of this road to be closed for the private use and benefit of the

defendants Gregorie, was in violation of their rights under Art. I, Sec. 17, of the State Constitution and under the 14th Amendment to the United States Constitution.

The Town of Blowing Rock holds its streets in trust not only for the municipality and its citizens, but also for the general public. *Swinson v. Realty Co.*, 200 N.C. 276, 156 S.E. 545; *City of Birmingham v. Hood-McPherson Realty Co.*, 233 Ala. 352, 172 So. 114, 108 A.L.R. 1140; 64 C.J.S., Mun. Corp., Sec. 1688.

The Court said in *Butler v. Tobacco Co.*, 152 N.C. 416, 68 S.E. 12: "The town authorities hold the streets in trust for the purposes of public traffic and cannot, in the absence of statutory power, grant to anyone the right to obstruct the street to the inconvenience of the public, even for public purposes, and for private purposes not at all."

G.S. 153-9(17) provides that the governing body of any municipality shall have power to close any street or road or portion thereof. It further provides that individuals owning property adjoining said street or road, who do not join in the request for the closing of said street or road, shall be notified by registered letter of the time and place of the meeting of the governing board at which the closing of said street or road is to be acted on, and it further provides that notice of said meeting shall be published once a week for four weeks in some newspaper published in the county, if there is one.

The stipulations state that no notice of the meeting of the governing body of the Town of Blowing Rock on 1 August 1950, was published in the *Watauga Democrat,* the only newspaper published in the county. The record is silent as to whether any individuals owning property adjoining Valley View Road, who did not request a closing of part of the road, were notified of this meeting of 1 August 1950 by registered letter.

The defendants stressfully contend that the statutory provisions of G.S. 153-9(17) are not binding on municipalities, because the Title or Caption of the Act amending G.S. 153-9(17), enacted by the General Assembly in Chapter 1208, 1949 Session Laws, is entitled "an act to amend section 153-9, subsection 17 of the General Statutes of North Carolina, to provide for the closing of streets lying outside municipalities by the boards of county commissioners," and the provisions in the amendatory act as to municipalities do not correspond with the subject expressed in the title. The defendants cited in support of their argument *S. v. Blease,* 95 S.C. 403, 79 S.E. 247, and 82 C.J.S., Statutes, p. 372. The pertinent part of the decision in *S. v. Blease* was based on Art. 3, Sec. 17 of the South Carolina Constitution, which is, "Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." 82 C.J.S., Statutes, pp. 372-373,

quoted in defendants' brief discusses constitutional provisions requiring the subject of a statute to be expressed in its title. These authorities are not in point for the reason that no such constitutional provision appears in the North Carolina Constitution. Art. II, Sec. 21 of the North Carolina Constitution reads: "Style of the Acts. The style of the Acts shall be 'The General Assembly of North Carolina do enact.'" G.S. 12-1 refers to public-local or private acts. Manifestly, these are not applicable to the question here discussed.

At the common law in England the title of an act was no part of the act. *S. v. Welsh*, 10 N.C. 404; *S. v. Woolard*, 119 N.C. 779, 25 S.E. 719; 50 Am. Jur., Statutes, Sec. 159. In this section of Am. Jur., it is said: "Originally, in England, titles were given to statutes by the judges who drew up the statutes from the records of Parliament. In the reign of Henry VI, bills in the form of statutes without titles were introduced." In *S. v. Woolard, supra*, it is said: "Indeed, prior to the eleventh year of Henry VII (1495), titles were very rarely prefixed at all. But now the title is part of the bill when introduced, being placed there by its author, and probably attracts more attention than any other part of the proposed law, and if it passes into law the title thereof is consequently a legislative declaration of the tenor and object of the Act. Indeed, so far is this true, and so important has the title become, that in many State Constitutions there are now provisions to guard against the title of bills being misleading. *Ratione cessante, cessat ipsa lex.* Consequently, when the meaning of an act is at all doubtful, all the authorities now concur that the title should be considered." This Court said in *In re Chisholm's Will*, 176 N.C. 211, 96 S.E. 1031: "Though the caption of a statute may be called in aid of construction, it cannot control the text when it is clear."

The defendants' contention that G.S. 153-9 (17) does not apply to municipalities is untenable.

The defendants further contend that, even if the statutory provisions as to notice set forth in G.S. 153-9 (17) apply to municipalities, G.S. 160-200 (11) gives power to a municipality to close its streets, and does not provide for the giving of notices, and that in closing a street a municipality has the choice as to whether it will proceed under G.S. 153-9 (17) or G.S. 160-200 (11).

Statutes *in pari materia* are to be construed together, and it is a general rule that the courts must harmonize such statutes, if possible, and give effect to each, that is, all applicable laws on the same subject matter should be construed together so as to produce a harmonious body of legislation, if possible. *Cab Co. v. Charlotte*, 234 N.C. 572, 68 S.E. 2d 433; *In re Blalock*, 233 N.C. 493, 64 S.E. 2d 848; 82 C.J.S., Statutes, Sec. 366.

"It may be presumed to have been the intention of the legislature that all its enactments which are not repealed should be given effect." 50 Am. Jur., Statutes, Sec. 362.

The object of all interpretations of statutes is to ascertain the meaning of the legislative intention, and to enforce it, if it does not violate constitutional provisions. It seems to us that there is no difficulty in harmonizing the provisions of G.S. 153-9(17) and G.S. 160-200(11), and that the true legislative intent is that if a municipality wishes to close a street, or a part thereof, the notices required by G.S. 153-9(17) must be given. Such an intent is fair and just, because it affords all interested parties an opportunity to be heard. To adopt the view contended for by defendants would require us to strike down the provisions as to notice set forth in G.S. 153-9(17). The lower court correctly decided that the resolution or ordinance passed by the Commissioners of the Town of Blowing Rock on 1 August 1950, was void, because the notices of such meeting as required by G.S. 153-9(17) were not given.

The quitclaim deed of Broyhill, and wife, could not revoke the accepted dedication by the Town of Blowing Rock of Valley View Road, as shown on the map of the subdivision, because the town has not lawfully consented to a revocation. *Rowe v. Durham, supra; Somersette v. Stanaland,* 202 N.C. 685, 163 S.E. 804; *McElroy v. Borough of Ft. Lee, supra; Keiter v. Berge, supra; Rose v. Elizabethtown, supra.*

The defendants contend that the lower court erred in failing to pass upon their pleas of estoppel and of the statute of limitations. The case was heard upon stipulations and admissions in the pleadings. There is no admission in the pleadings that plaintiff is estopped to maintain this action, or that its action is barred by the statute of limitations. No reference to those pleas occur in the stipulations. The defendants further contend that the plaintiff did not allege that the resolution of 1 August 1950, was *ultra vires,* or illegal, and that no notice of the meeting, as required by G.S. 153-9(17), was given. However, the fact that the required notice was not given is stated in the stipulations.

When a case is tried upon an agreed statement of facts, it "is in the nature of a special verdict, admitting there is no dispute as to the facts and constituting a request by each litigant for a judgment which each contends arises as a matter of law on the facts agreed. . . ." *Sparrow v. Casualty Co., ante,* 60, 89 S.E. 2d 800.

The lower court decided the case, and rendered judgment, upon the stipulations agreed upon by the parties. Questions of failure to make certain allegations in the complaint, of estoppel and of the Statute of Limitations were not presented to the lower court for decision by the agreed stipulations.

The judgment states that "the court, at the request and insistence of counsel for both plaintiff and defendants, went with both counsel upon the premises, viewed the terrain and road in question and made the following observations." The defendants now manfully contend that the court erred in putting its observations in its judgment. Conceding that such observations have no place in the judgment, because "the court is not permitted to infer or deduce further facts from those stipulated" (*Sparrow v. Casualty Co., supra*), such observations were harmless, and have had no effect on our decision.

When a street of a municipality is unlawfully obstructed, the municipality may maintain a suit for mandatory injunction to remove the obstruction. *Adams v. Commissioners of Town of Trappe,* 204 Md. 165, 102 A. 2d 830; 64 C.J.S., Mun. Corp., p. 187. See: *Broocks v. Muirhead,* 223 N.C. 227, 25 S.E. 2d 889.

The assignments of error of the defendants are overruled. The judgment below is

Affirmed.